IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-32467-H4-7 |
| ROYCE HOMES, L.P., | § | (Chapter 7) |
| Debtor. | § | |

| | | |
|---|---|---|
| RODNEY TOW, TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| JOHN H. SPEER, AMEGY BANK, N.A., | § | |
| AMEGY MORTGAGE COMPANY, L.L.C., | § | |
| MICHAEL MANNERS, | § | |
| DONNIE LOU SPEER, VESTALIA, L.L.C., | § | ADVERSARY NO. 11-03191 |
| HAMMERSMITH GROUP, L.L.C. | § | |
| f/k/a HAMMERSMITH GROUP, INC., | § | |
| PARK LAKE COMMUNITIES, L.P., | § | |
| WATERMARK LAND, L.L.C., | § | |
| WATERMARK LAND, L.P., | § | |
| WATERMARK TORTUGA, L.L.C., | § | |
| ALLARD INVESTMENT COMPANY, | § | |
| L.L.C., DWM HOLDINGS, INC., | § | |
| MGM MOTOR SPORTS, L.L.C., | § | |
| SARACEN HOLDINGS, INC., and | § | |
| GEORGE KOPECKY, | § | |
| Defendants. | § | |

**AMEGY BANK NATIONAL ASSOCIATION'S AND AMEGY MORTGAGE COMPANY,
L.L.C.'S MOTION TO DISMISS CERTAIN CLAIMS IN TRUSTEE'S ORIGINAL
COMPLAINT PURSUANT TO FED. R. CIV. P. 12**

Pursuant to Local Rule 9013:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

### REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE JUDGE BOHM:

Amegy Bank National Association and Amegy Mortgage Company, L.L.C., Defendants in the above styled adversary proceeding, file this Motion to Dismiss Certain Claims in Trustee's Original Complaint Pursuant to FED. R. CIV. P. 12.[1] Amegy Bank National Association and Amegy Mortgage Company, L.L.C. respectfully move the Court to dismiss portions of the Original Complaint [Dkt No. 404 in Case No. 09-32467] (the "Complaint") filed by Trustee Rodney Tow (the "Trustee") as to Amegy Bank National Association and Amegy Mortgage Company, L.L.C. for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).

---

[1]   Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, FED. R. CIV. P. 12(b) applies in adversary proceedings such as this one.

## I.

### Summary of argument

1.      Several of the claims brought by Trustee against Amegy Bank, N.A.[2] ("Amegy Bank") and Amegy Mortgage Company, L.L.C. ("Amegy Mortgage") (collectively referred to as "Amegy") should be dismissed. In fact, several of the causes of action brought by Trustee do not even exist. For the ones that do, there is no valid basis for liability against Amegy because either Trustee has not plead adequate facts, or the claim fails as a matter of law. In support of these assertions, Amegy would show this Court the following:

## II.

### Applicable pleading standards

2.      <u>Pleadings</u>: Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court of the United States clarified the standards that apply in a motion to dismiss for failure to state a claim. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a),[3] which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court can dismiss a complaint for failure to state a claim if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly*). "[A] plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[2]      Actually named Amegy Bank National Association.

[3]      Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, FED. R. CIV. P. 8 applies in adversary proceedings such as this one.

*Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 636 (S.D. Tex. 2007) (also quoting *Twombly*). "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* (quoting *Twombly*). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide the plaintiff's grounds for entitlement to relief – including *factual* allegations that, when assumed to be true, raise a right to relief above the speculative level. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.' " *Id.* A court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See generally id.* at 401 n.4.

3.     In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 129 S. Ct. 1937, 1950 (2009). A cause of action that is not supported by *any* specific factual allegations does not survive the plausibility standard established in *Iqbal* (the "Plausibility Standard"). Under Rules 8(a) and 9(b), the Trustee may not proceed against any defendant without some specific factual allegations against that defendant.

4.     To satisfy the Plausibility Standard, a complaint must meet two fundamental criteria. First, it must set forth a claim upon which relief could be granted. Second, it must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. A complaint cannot fulfill those criteria without alleging sufficient facts to provide concrete notice of

-4-

the alleged wrongdoing and, putting conclusory allegations to the side, a reasonable basis for inferring that there may be wrongful conduct, *i.e.,* to demonstrate a "reasonably founded hope that the [discovery] process will reveal relevant evidence" sufficient to establish the plaintiff's claim. *Dura Pharms. v. Broudo,* 544 U.S. 336, 347 (2005) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741 (1975)).

5.      Thus, the Plausibility Standard requires sufficient facts to provide fair notice and to give rise to a reasonably grounded expectation that discovery will produce relevant evidence to support the claims. In the absence of direct and non-conclusory allegations on every material point, the complaint "must contain allegations from which an inference fairly may be drawn by the district court that evidence on these material points will be available and introduced at trial." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 227 (3d ed. 2004). Otherwise, a plaintiff with "a largely groundless claim" would be permitted to "simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *See Dura Pharms.*, 544 U.S. at 347.

6.      While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Iqbal*, 129 S. Ct. at 1949-50. A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* at 1940.

7.      <u>Fraud</u>: Rule 9 states in pertinent part:

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . .

-5-

FED. R. CIV. P. 9.[4]

8.      As the Ninth Circuit stated in 2007:

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); *In re Juliet Homes, LP*, No. 09-03429, 2010 WL 5256806, at *22 (Bankr. S.D. Tex. Dec. 16, 2010) (mem. op.).

9.      Federal courts have analogized fraud pleading to "the first paragraph of any newspaper story," requiring "the who, what, when, where, and how" of the circumstances with respect to each and every defendant alleged to have committed fraud. *Indiana Bell Tel. Co. v. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 485305 at *2 (W.D. Tex. Jan. 11, 2006). A complaint that does not comply with the specificity requirements of Rule 9(b) fails to state claims for fraud upon which relief can be granted. *See In re NE 40 Partners, Ltd.*, 411 B.R. 352, 365 n.9 (Bankr. S.D. 2009) (Bohm, J.) (stating that Rule 9(b) applies to fraudulent transfer claims that allege actual intent).

10.      When a claim involves multiple defendants, a plaintiff cannot simply group the defendants together, but must make specific and separate allegations against each particular defendant. *See Swartz*, 476 F.3d at 764-65. Thus, for the alleged fraud, Trustee must distinguish among the defendants and describe the respective role, if any, of each. Generally, there must be a misrepresentation for there to be fraud.

---

[4]      Pursuant to Rule 7009 of the Federal Rules of Bankruptcy Procedure, FED. R. CIV. P. 9 applies in adversary proceedings such as this one.

## III.

### Argument and authority[5]

**A.    Neither Amegy Bank nor Amegy Mortgage can be held liable for fraud as a matter of law**

11.    With regard to Trustee's fraud claims, Amegy asserts that no representations by Amegy serve as the basis for any of Trustee's fraud claims. Therefore, Trustee cannot satisfy the elements of fraud, provide any of the requisite details, or meet the pleading requirements under Rules 8 and 9 described above. *See HEI Res. E. OMG, Joint Venture v. Evans*, No. 09-41046, 2011 WL 594653, at *3 (5th Cir. Feb. 18, 2011) (stating that a material representation is one of the essential elements of fraud under Texas law); FED. R. CIV. P. 8; FED. R. CIV. P. 9.

12.    Moreover, Amegy had no duty to disclose any information to Debtor. Trustee has not even plead a fiduciary relationship or a special relationship between Amegy and Debtor. *See* Complaint, at 75; *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, LP*, 620 F.3d 465, 468 (5th Cir. 2010) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) for the proposition that "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship").

13.    For these reasons, Trustee's fraud claims against Amegy should be dismissed.

**B.    Neither Amegy Bank nor Amegy Mortgage can be held liable for any breach of the Partnership Agreement, as a matter of law**

14.    Section VI.A. of the Complaint presents a claim for breach of the First Amended and Restated Agreement of Limited Partnership of Royce Homes, L.P. (the "Partnership Agreement"). The Complaint states:

---

5       All of Amegy's arguments are made in the alternative.

> The Trustee files this claim against Speer, Manners, Kopecky, Hammersmith Group, Inc., and Hammersmith Group, LLC *and any other Defendant actively involved or who is necessary to the claim*
> . . .

Complaint, at 15 (emphasis added). A few pages later, the Complaint makes it clear that the Trustee believes Amegy is one of the other Defendants "necessary to this claim":

> The Breach of Partnership Defendants and Amegy conspired and aided and abetted to breach the Partnership Agreement.

*Id.* at 19.

15.     With regard to these breach of contract claims, it is important that Amegy **was not** a party to the Partnership Agreement. John Speer ("Speer") was also not a party to the Partnership Agreement (or a partner in Royce Homes, L.P.). A suit for breach of contract may not be maintained against an entity or person who is not a party to the contract. *Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App.–Austin 1982, writ ref'd n.r.e.); *see also Smiley v. Oxford Capital, LLC*, 100 Fed. App'x. 970, 973 (5th Cir. 2004) (citing *Raymond v. Rahme*, 78 S.W.3d 552, 561 (Tex. App.–Austin 2002, no pet.) for statement that "where parties lack contractual relationship, no breach of contract claim can be brought by either against the other").[6]

*There is no cause of action for conspiracy to breach a contract*

16.     As a matter of law, one cannot conspire to breach a contract. There is no such cause of action in Texas. *Grizzle v. Texas Commerce Bank, N.A.*, 38 S.W.3d 265, 284-85 (Tex.

---

[6]     In various portions of this Motion, Texas cases are cited because of Section 12.4 of the Partnership Agreement:

> 12.4    Governing Law, Successors, Severability. The internal affairs of the Partnership and the relative rights of the parties to this Agreement shall be governed by the laws of the State of Delaware . . . All other rights and remedies shall be governed by the laws of the State of Texas.

Exhibit A to Complaint, at 36. Texas law applies to the alleged "breach of contract" issues related to Amegy Bank and Amegy Mortgage, as they are non-parties to the Partnership Agreement.

App.–Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002); *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) (stating "a conspiracy to breach a contract is not actionable under Texas law"); *Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 851 (E.D. Tex. 2002). For this reason, any cause of action against Amegy Bank or Amegy Mortgage (two entities that are not parties to the Partnership Agreement) based on conspiracy to breach a contract should be dismissed.

*There is no cause of action for aiding and abetting the breach of a contract*

17.     Similarly, as a matter of law, a party cannot aid and abet the breach of a contract. There is no Texas authority that recognizes the cause of action of aiding and abetting a breach of contract.

18.     In addition, the nature of the cause of action for aiding and abetting shows what Trustee has plead is untenable. There are three types of civil aiding and abetting: (1) assisting or encouraging, (2) assisting and participating, and (3) concert of action. A tortious act is an essential element of all three types. *See Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969); *In re Enron Corp. Sec., Derivative, and "ERISA" Litig.*, No. MDL-1446, 2011 WL 43421, at *49 (S.D. Tex. Jan. 6, 2011) (questioning recognition of "concert of action" and citing above *Juhl* opinion for position that such theory requires underlying tortious act). Clearly, the breach of a partnership agreement cannot fill the role of an underlying tort.

19.     For these reasons, any cause of action against Amegy Bank or Amegy Mortgage based on aiding and abetting the breach of a contract should also be dismissed.

*Speer was not a party to the Partnership Agreement*

20.     As mentioned above, Speer was not a party to the Partnership Agreement. He was

-9-

not a partner in Royce Homes, L.P.   The Partnership Agreement was only executed by Hammersmith Group, Inc., Royce Homes, Inc., and First Duval Group, Inc.  Speer cannot be held liable for breaching a contract that he did not execute in his individual capacity. *See First ATM, Inc. v. Onedoz*, No. 03-08-00286-CV, 2009 WL 349164, at *4-5 (Tex. App.–Austin Feb. 13, 2009, no pet.) (not designated for publication); *Bowers v. Campbell*, 250 F.3d 744 (5th Cir. 2001) (applying Mississippi substantive law and rejecting individual claims for "tortious breach of contract" against corporate officer because of corporate veil and lack of underlying tort); *Smiley*, 100 Fed. App'x. at 973.  Thus, with regard to the breach of contract claims, Speer is not liable in the capacity in which he has been sued.

### *Hammersmith did not breach the Partnership Agreement*

21.      In the Complaint, Trustee alleges that Hammersmith Group, LLC ("Hammersmith"),[7] Speer, and others breached the Partnership Agreement by (1) making distributions from borrowed funds, and (2) expending Royce Homes's capital in furtherance of items other than the business of the partnership.  Not true.  Trustee quoted only certain portions of the Partnership Agreement; several of the unquoted parts undermine his claim, and prove that–as general partner–Hammersmith had every right to do what it did.

### *This Court can interpret the Partnership Agreement as a matter of law*

22.      The Trustee asserts that:

The Breach of Partnership Defendants breached the Partnership Agreement when they made, or allowed to be made, the distributions for the Amegy principal payments of $10 million, $2.5 million, and another $2.5 million from January 2007 through January 2008.

---

[7]      Hammersmith Group, Inc. was the original general partner of Royce Homes, L.P.  In 2008 Hammersmith Group, Inc. was converted into Hammersmith Group, LLC.

-10-

Complaint, at 19. He argues that, "The Partnership Agreement restricts Distributions and Tax Distributions such that they may only be paid from Available Cash." *Id.* at 16-17.

23.    However, a proper interpretation of the entire Partnership Agreement shows that Hammersmith had the right, as a matter of law, to make the subject distributions. If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, the Court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, No. 4:07-cv-2210, 2010 WL 889786, at \*1 (S.D. Tex. Mar. 9, 2010); *Playtex FP, Inc. v. Columbia Cas. Co.*, 622 A.2d 1074, 1076 (Del. Super. Ct. 1992); *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 686 A.2d 152, 155 (Del. 1996); *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008). In construing a written contract, the primary concern of a court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker*, 650 S.W.2d at 393; *Playtex*, 622 A.2d at 1076. To achieve this objective, courts should examine and consider the *entire* writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Playtex*, 622 A.2d at 1076; *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 581 n.27 (5th Cir. 2009). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *See Coker*, 650 S.W.2d at 393; *Playtex*, 622 A.2d at 1076.

24.    The Partnership Agreement defines "Available Cash" in the following manner:

> "Available Cash" means all cash funds of the Partnership on hand from time to time (other than cash funds obtained as contributions to the capital of the Partnership by the Partners and cash funds obtained from loans to the Partnership) after (i) payment of all operating expenses of the Partnership as of such time, and (ii) provision for a working capital reserve in an amount to be determined by the General Partner, including amounts required to ensure full compliance with

-11-

the terms of all loan covenants and agreements of the Partnership.

Exhibit A to Complaint, at 2.

25.    But under the law no single provision taken alone can be given controlling effect.

Although Trustee would like to ignore the following provisions (contained in the very same

document), they grant Hammersmith broad rights in this regard:

> **3.4 Partnership Borrowing** . . . The General Partner may cause the
> Partnership to borrow money from time to time, from third parties or
> from the General Partner, and may mortgage or pledge Partnership
> Property to obtain and secure the repayment of such loans. *The
> proceeds of Partnership loans may be used for any Partnership
> purpose*, including, but not limited to, the payment of the costs
> related to partnership expenses or to refinance Partnership
> indebtedness.
>
> **3.6 Revenues** . . . The extent to which the Partnership accumulates
> *or expends its revenues* will be determined in the sole discretion of
> the General Partner . . .
>
> **4.7 Distributions.** Except as otherwise provided in Section 9.4
> hereof, distributions of Available Cash shall be made as follows:
>
> . . .
> (c) Third, *in the General Partners's sole discretion*, to the extent
> there remains any Available Cash, it may be distributed to the
> Partners in proportion to their Partnership Interests. The General
> Partner has the authority to retain any amount of funds it deems
> advisable, in its sole discretion, in order to develop and expand the
> business of the Partnership.[8]
>
> **5.1 Management.** Except as otherwise provided in this Agreement
> but consistent with the General Partner's fiduciary responsibility for
> the safekeeping and use of all Partnership Property, the General
> Partner shall have the full and exclusive power and authority on
> behalf of the Partnership to manage, control, administer and operate
> the business and affairs of the Partnership, and to do or cause to be
> done any and all acts which it deems to be necessary or appropriate
> thereto, and the scope of such power and authority shall encompass
> all matters in any way connected with or incident to such business,

---

[8]    The events described in (a) and (b) of Section 4.7 had already occurred by September 20, 2006.

> including, but not limited to, the power and authority:
> (a) *to expend the Partnership's capital and revenues* in furtherance
> of the business of the Partnership . . .

*Id.* at 11, 16, and 17 (emphasis added).

26.     Read as a whole–as is required under the law–it is clear that Hammersmith had the authority to make the distributions that are at issue in this case.

### Hammersmith has been released from liability

27.     Near the beginning of the section in the Complaint regarding Breach of Partnership Agreement, Trustee states the general proposition that "[a] partnership may maintain an action against a partner for a breach of the partnership agreement, or for the violation of a duty to the partnership, causing harm to the partnership." Complaint, at 15-16. Trustee cites to DEL. CODE ANN. tit. 6, § 15-405(a) (the Delaware Revised Uniform Partnership Act or "DRUPA") for this proposition because "[t]he internal affairs of the Partnership and the relative rights of the parties to [the Partnership] Agreement shall be governed by the laws of the State of Delaware . . . " Exhibit A to Complaint, at 36.

28.     However, such an action for breach cannot be brought in this case against Royce Homes's general partner. Such liability was expressly released, as this issue was specifically addressed in the Partnership Agreement. *See Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 654 n.27 (5th Cir. 2003) (citing *Day v. Toman*, 266 F.3d 831, 836 (8thCir. 2001) and recognizing release as a valid defense); *Lloyd v. Ray*, 606 S.W.2d 545, 547 (Tex. Civ. App.–San Antonio 1980, writ ref'd n.r.e.) (stating that a release is a surrender of a cause of action); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (stating that a release operates to extinguish a cause of action). Section 5.3 provides in pertinent part:

-13-

**5.3    Liabilities; Indemnification**

>      (a)    THE GENERAL PARTNER SHALL NOT BE
> LIABLE TO THE PARTNERSHIP OR THE PARTNERS
> FOR ANY LOSS OR DAMAGE INCURRED BY THE
> PARTNERSHIP OR ANY PARTNER BY REASON OF
> ANY ACT OR OMISSION (WHETHER NEGLIGENT OR
> NOT) PERFORMED OR OMITTED BY THE GENERAL
> PARTNER IN GOOD FAITH AND IN A MANNER
> REASONABLY   BELIEVED   BY   THE   GENERAL
> PARTNER TO BE WITHIN THE SCOPE OF THE
> AUTHORITY GRANTED TO THE GENERAL PARTNER
> BY THIS AGREEMENT. THE PARTNERSHIP SHALL
> INDEMNIFY AND SAVE HARMLESS THE GENERAL
> PARTNER TO THE FULLEST EXTENT NOW OR
> HEREAFTER PERMITTED BY THE ACT.

Exhibit A to Complaint, at 19 (bold headings in original). This provision trumps the statutory

provisions cited by Trustee. As DEL. CODE ANN. tit. 6, § 15-103 states,

> (a) Except as otherwise provided in subsection (b), relations among
> the partners and between the partners and the partnership are
> governed by the partnership agreement.

DEL. CODE ANN. tit. 6, § 15-103(a) (also stating that DRUPA only governs relations between the

partners and the partnership to the extent the partnership agreement does *not* address the topic).

Thus, Hammersmith cannot be held liable for the claims the Trustee has brought in this adversary.

29.    The above-quoted contractual clause protects those acts or omissions performed by

the general partner "in good faith." Trustee tries to evade the effect of the clause with the following

conclusory and unfounded allegation: "With respect to every claim asserted in this Complaint, the

Breach of Partnership Defendants acted in bad faith." Complaint, at 15. Under Rule 8 and the *Iqbal*

and *Twombly* cases, this bald assertion is not enough. FED. R. CIV. P. 8 (a pleading must contain

statements "showing that the pleader is entitled to relief"; *Iqbal*, 129 S. Ct. at 1949 (stating that a

-14-

pleading that only offers "labels and conclusion" will not do); *Twombly*, 550 U.S. at 555. Trustee

needs to plead *facts* that actually show Hammersmith's bad faith, and he has failed to do so.

      30.    Amegy is not a party to the Partnership Agreement and therefore cannot breach it as

a matter of law. Amegy cannot conspire or aid and abet a breach of contract as a matter of law.

The Partnership Agreement was not breached as a matter of law.

**C.    Neither Amegy Bank nor Amegy Mortgage can be held liable for any breach of fiduciary duty, as matter of law**

      31.    Because there is no valid breach of contract claim, the breach of fiduciary

duty/conspiracy claims against Amegy Bank and Amegy Mortgage also fail.

      32.    According to Trustee's pleadings, the breach of fiduciary claim against Amegy

hinges and depends on the merits of his contract action:

> 180. The Partnership Agreement imposes a fiduciary duty on the general partner in Section 5.1:
>
> > *5.1* **Management***. Except as otherwise provided in this Agreement but* **consistent with the General Partner's fiduciary responsibility for the safekeeping and use of all Partnership Property,** *the General Partner shall have the full and exclusive power and authority on behalf of the Partnership to manage, control, administer and operate the business and affairs of the Partnership, and to do or cause to be done any and all acts which it deems to be necessary or appropriate thereto, and the scope of such power and authority shall encompass all matters in any way connected with or incident to such business . . . (Emphasis added) . . .*
>
> 306. The Fiduciaries' conduct was not authorized by the Partnership Agreement. In carrying out the scheme the Fiduciaries totally abandoned Royce Homes's interest. Their interests were adverse to Royce Homes and not for its benefit. The Fiduciaries intended to act solely for their own purpose or for the purposes of Amegy. On information and belief, other than the parties sued herein, there were relevant decision-makers in management for Hammersmith and

> Royce Homes who were innocent of the breach of fiduciary duty and
> fraud and if informed of the wrongful conduct could have stopped it.
>
> 307.   All of the Fiduciaries, Westwood Fiduciary, Watermark
> Fiduciaries, and the Allard Fiduciaries owed fiduciary duties to
> Royce Homes. They:
>> a. violated this duty in failing to care for Royce Homes and
>> to safeguard its assets.
>> b.   failed to care and safeguard Royce Homes's assets
>> [because] they remove assets when they were not authorized
>> to do so under the Partnership Agreement . . .

Complaint, at 44, 75 (italics and emphasis in original).

33.   This is similar to a situation that confronted the Supreme Court of Texas in 2000.

In *Lopez v. Munoz, Hockema & Reed, L.L.P.*, several clients sued a law firm for breach of contract

and breach of fiduciary duty.  22 S.W.3d 857 (Tex. 2000).  The contract in question was a

contingency fee agreement that allowed the firm to charge an additional five percent if the matter

was appealed to a higher court.  *Id.* at 859.  The main issue was whether the firm had breached the

agreement by charging an extra five percent when the defendant filed a cash deposit.  *Id.*

34.   *Lopez* held that the trial court did not err in granting the firm's summary judgment

on the breach of contract claim.  *See id.* at 862.

35.   So the next question was what effect would the above holding have on the claim

regarding breach of fiduciary duty.  The court reasoned:

> The Lopezes' breach of fiduciary duty claim, as presented in their
> pleadings and summary judgment motion, was grounded solely on
> the theory that MHR breached its contract.  As the court of appeals
> noted, "the Lopez family tied its breach of fiduciary duty claim to its
> breach of contract claim." [Citation omitted] . . . Nowhere in their
> pleadings, their motion for summary judgment, or their response to
> MHR's motion for summary judgment did the Lopezes argue that
> MHR breached its fiduciary duty other than by breaching its contract
> . . . We have already decided that the trial court did not err in granting
> MHR's motion for summary judgment on the breach of contract
> claim.  Becausae the Lopezes premised their breach of fiduciary duty

-16-

> claim on MHR's alleged contract breach, our conclusion on the contract issue necessarily disposes of the breach of fiduciary duty claim.

*Id.*

36.     In this case, as in *Lopez*, the lack of a contract breach disposes of the breach of fiduciary duty claim.

37.     For the purposes of this Court's fiduciary duty analysis, it is also important to note that Trustee's pleading regarding the business judgment rule is incorrect. In Paragraph 197 of the Complaint, Trustee states (without citation):

> The business judgment rule does not apply to the Fiduciaries in the transactions mentioned above because the Fiduciaries were not disinterested parties, the Fiduciaries appeared on both sides of the transaction, they derived personal financial benefit from their self-dealing as opposed to legitimate benefit.

Complaint, at 48.

38.     Even if the breach of fiduciary duty claims survive, the claims alleged by Trustee against Amegy Bank and Amegy Mortgage must be based solely on the fiduciary duties explicitly listed in the Partnership Agreement. "[W]here the Partnership Agreement provides the standard that will govern the duty owed by a General Partner to its partners . . . *it is the contractual standard and not the default fiduciary duty* . . . standard that exclusively controls." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. CIV. A. 15754, 2000 WL 1476663, at *10 (Del. Ch. Sept. 27, 2000) (mem. op.) (emphasis added); *see also Sonet v. Timber Co., L.P.*, 722 A.2d 319, 322 (Del. Ch. 1998) (holding that traditional fiduciary duties among and between partners are defaults that may be modified by partnership agreements, and determining that the partnership agreement–not common law fiduciary doctrines–controls). In Delaware, "a claim of breach of fiduciary duty must first be analyzed in terms of the operative governing instrument–the partnership agreement–and only

where that document is silent or ambiguous, or where principles of equity are implicated, will a Court begin to look for guidance from the statutory default rules, traditional notions of fiduciary duties, or other extrinsic evidence." *Id.* at 324.

39.     Article 5 of the Partnership Agreement states that the General Partner has a fiduciary duty for the safekeeping and use of all Partnership Property. Any claims made by Trustee of a breach of fiduciary duty, therefore, must be based on (and filtered through) the duty stated within the Partnership Agreement, and not on any other alleged fiduciary duties that may exist under Delaware law. Any claims based on any other alleged fiduciary duties must be dismissed.

## D.     The Complaint limits Trustee regarding his fraudulent transfer claims

*Application of federal pleading standards to the Complaint*

40.     Trustee recites the elements of fraudulent transfer in Paragraph 414 of the Complaint. However, the only portion of 11 U.S.C. § 548(a)(1)(B) that he attempts to support with factual allegations is 548(a)(1)(B)(ii)(II). That provision addresses the situation when the debtor

> was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an *unreasonably small capital*;

11 U.S.C. § 548 (emphasis added).

41.     Trustee continues by stating that Royce Homes was left with unreasonably small capital, as demonstrated by the following:

> 431.   Several factors demonstrate Royce Homes had unreasonably small capital. These include the fact the Partnership Agreement set forth minimum levels of capital and capital reserve which were required to be maintained. Specifically, the Partnership Agreement required that Royce Homes not make distributions at times when Available Cash could not pay all operating expenses of the Partnership and did not have a sufficient provision for a working capital reserve in an amount to ensure full compliance with the terms of all loan covenants and agreements of the Partnership.

-18-

> 432. Further, Royce Homes's lenders and Amegy established debt-
> to-equity ratios and net worth covenants in their loan agreements
> which contractually established a point at which unreasonably small
> capital existed. It is undisputed that maintaining debt-to-equity ratios
> was critical to Royce Homes. As set forth in more detail above,
> Royce Homes began to breach debt-to-equity ratios as early as
> November 2006.
>
> 433. Based on all of the facts set forth throughout this Complaint,
> specifically paragraphs 198 to 250, Royce Homes maintained
> unreasonably small capital as of and after the January 2007 $10
> million distribution.
>
> 434. As a result of the Amegy Transfers, Royce Homes had
> unreasonably small capital remaining . . .

Complaint, at 112-13.

42.     With regard to 11 U.S.C. § 548(a)(1)(B), Trustee's pleadings are limited to allegations regarding unreasonably small capital. There are no factual allegations regarding the other prongs–insolvency, debts beyond Debtor's ability to pay as they matured, and making transfers for the benefit of an insider under an employment contract. *See* 11 U.S.C. § 548. From a pleading standpoint a formulaic recitation of the elements of a cause of action will not do. *Bradley*, 527 F. Supp. 2d at 636; *Twombly*, 550 U.S. at 555. For these reasons, Trustee is limited to the concept of unreasonably small capital as the underlying basis for liability under Section 548.

## IV.

### Conclusion and prayer

WHEREFORE Amegy Bank National Association and Amegy Mortgage Company, L.L.C. move the Court to enter an order dismissing various claims brought against Amegy Bank National Association and Amegy Mortgage Company, L.L.C. for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). Amegy Bank National Association and Amegy Mortgage Company, L.L.C. would also pray that they be granted such other and further relief to

which they may show themselves justly entitled.

Dated: May 27, 2011.

Respectfully submitted,

By: ______________________________

George R. Gibson
Texas Bar No. 00793802
Southern District of Texas No. 19879
Attorney-in-Charge for Amegy Bank National Association and Amegy Mortgage Company, L.L.C.
2800 Post Oak Boulevard, 61st Floor
Houston, Texas 77056
Telephone: 713.960.0303
Facsimile: 713.892.4800

OF COUNSEL:

**NATHAN SOMMERS JACOBS**
A Professional Corporation
Kent Altsuler
Texas Bar No. 24001646
Southern District of Texas No. 23424
Seth A. Miller
Texas Bar No. 24055977
Southern District of Texas No. 724733
2800 Post Oak Boulevard, 61st Floor
Houston, Texas 77056
Telephone: 713.960.0303
Facsimile: 713.892.4800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Amegy Bank National Association's and Amegy Mortgage Company, L.L.C.'s Motion to Dismiss Certain Claims in Trustee's Original Complaint Pursuant to FED. R. CIV. P. 12 was electronically transmitted to the District Clerk for the United States District Court, Southern District of Texas, for filing on May 27, 2011, and electronic notice was given to the following ECF registrants:

Rodney Tow                              By E-Mail (rtow@towkoenig.com) and First Class Mail
Julie Koenig                            By E-Mail (jkoenig@towkoenig.com) and First Class Mail
Tow & Koenig, P.L.L.C.
26219 Oak Ridge Drive
The Woodlands, Texas 77380

Michael Duncan                          By E-Mail (mikedunc@cagehill.com) and First Class Mail
Cage Hill & Niehaus, L.L.P.
5851 San Felipe, Suite 950
Houston, Texas 77057

Erin E. Jones                           By E-Mail (erin@jmkllp.com) and First Class Mail
Jones Morris Klevenhagen, L.L.P.
6363 Woodway, Suite 570
Houston, Texas 77057

Peter Johnson                           By E-Mail (pjlawecf@pjlaw.com) and First Class Mail
Law Offices of Peter Johnson
Eleven Greenway Plaza, Suite 2820
Houston, Texas 77046

Steven Shurn                            By E-Mail (sshurn@hwallp.com) and First Class Mail
C. Ed Harrell                           By E-Mail (eharrell@hwallp.com) and First Class Mail
Hughes Watters Askanase, L.L.P.
333 Clay Street, 29th Floor
Houston, Texas 77002

Hammersmith Group, L.L.C.                                              By First Class Mail
Park Lake Communities
c/o John H. Speer
16427 Telge Road
Cypress, Texas 77429-7029

Donnie Lou Speer                                                      By First Class Mail
14322 Darschelle Court
Houston, Texas 77069

Christopher D. Johnson                        By E-Mail (cjohnson@mckoolsmith.com)
McKool Smith                                              and First Class Mail
600 Travis Street, Suite 7000
Houston, Texas 77002

Michael J. Durrschmidt                        By E-Mail (mdurrschmidt@hirschwest.com)
Hirsch & Westheimer, P.C.                                and First Class Mail
700 Louisiana Street, Suite 2550
Bank of America Center
Houston, Texas 77002-2772

Watermark Tortuga L.L.C.                                By First Class Mail
c/o James Hunter
6511 Riva Ridge Drive
Richmond, Texas 77406

Saracen Holdings, Inc.                                  By First Class Mail
c/o Michael Manners
17510 Red Oak Drive, Suite 100
Houston, Texas 77090

Watermark Land LLC                                      By First Class Mail
Watermark Land LP
George Kopecky
21408 Provincial Boulevard
Katy, Texas 77450

David C. Martin                                         By First Class Mail
Zukowski, Bresenhan & Sinex, LLP
1177 West Loop South, Suite 1100
Houston, Texas 77027

_____
George R. Gibson

W:\Amegy Bank\Royce Homes - Adversary\Motion to dismiss.v4.wpd

-22-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-32467-H4-7 |
| ROYCE HOMES, L.P., | § | (Chapter 7) |
| Debtor. | § | |

| | | |
|---|---|---|
| RODNEY TOW, TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| JOHN H. SPEER, AMEGY BANK, N.A., | § | |
| AMEGY MORTGAGE COMPANY, L.L.C., | § | |
| MICHAEL MANNERS, | § | |
| DONNIE LOU SPEER, VESTALIA, L.L.C., | § | ADVERSARY NO. 11-03191 |
| HAMMERSMITH GROUP, L.L.C. | § | |
| f/k/a HAMMERSMITH GROUP, INC., | § | |
| PARK LAKE COMMUNITIES, L.P., | § | |
| WATERMARK LAND, L.L.C., | § | |
| WATERMARK LAND, L.P., | § | |
| WATERMARK TORTUGA, L.L.C., | § | |
| ALLARD INVESTMENT COMPANY, | § | |
| L.L.C., DWM HOLDINGS, INC., | § | |
| MGM MOTOR SPORTS, L.L.C., | § | |
| SARACEN HOLDINGS, INC., and | § | |
| GEORGE KOPECKY, | § | |
| Defendants. | § | |

### ORDER REGARDING AMEGY BANK NATIONAL ASSOCIATION'S AND AMEGY MORTGAGE COMPANY, L.L.C.'S MOTION TO DISMISS CERTAIN CLAIMS IN TRUSTEE'S ORIGINAL COMPLAINT PURSUANT TO FED. R. CIV. P. 12

BE IT REMEMBERED THAT on this date came on for consideration in the above-referenced bankruptcy case Amegy Bank National Association's and Amegy Mortgage Company, L.L.C.'s Motion to Dismiss Certain Claims in Trustee's Original Complaint Pursuant to FED. R. CIV. P. 12 (the "Motion"). The Court, after considering the pleadings on file herein, finds that the Motion should be GRANTED. Accordingly, it is

ORDERED and ADJUDGED that the Motion should be and is hereby GRANTED in its entirety. Further, it is

ORDERED and ADJUDGED that the following causes of action against Amegy Bank, N.A. and Amegy Mortgage Company, L.L.C. are DISMISSED WITH PREJUDICE from this adversary proceeding:

- breach of partnership agreement (breach of contract);

- conspiracy to breach partnership agreement;

- aiding and abetting the breach of partnership agreement;

- breach of fiduciary duty;

- conspiracy to breach fiduciary duty;

- aiding and abetting the breach of fiduciary duty;

- acting in concert in the breach of fiduciary duty;

- fraud; and

- fraudulent transfer, except for claims under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

Signed this _____ day of _____, 2011.


_____

Jeff Bohm
United States Bankruptcy Judge

-2-