THIS NOTE NOT ASSIGNABLE OR NEGOTIABLE



## SECURED NON-NEGOTIABLE PROMISSORY NOTE

$3,000,000.00                         Houston, Texas                    December 11, 2005

1.  **AGREEMENT TO PAY.** FOR VALUE RECEIVED, the undersigned, JOHN HOPKINS SPEER (hereinafter referred to as the "Debtor"), promises to pay to the order of DONNIE LOU SPEER, a resident of Harris County, Texas (the "Payee" or the "Holder"), the principal sum of THREE MILLION AND NO/100 DOLLARS ($3,000,000.00), together with interest on the principal balance from time to time remaining unpaid hereon, computed daily on the basis of a year of 365 days for the actual number of days elapsed, at the Default Rate of Interest if in effect at any time. All payments of principal and interest on this Note shall be made to the Payee at 7850 North Sam Houston Parkway, Houston, Texas 77064, or at such other place or places as the holder hereof may direct from time to time. This note is non-negotiable.

2.  **NO STATED INTEREST PRIOR TO DEFAULT OR DEATH OF DONNIE LOU SPEER.** Outstanding principal balances hereof prior to Default or the death of Donnie Lou Speer shall not bear interest. Commencing on the death of Donnie Lou Speer the outstanding principal balances hereof shall begin to bear interest at the default rate. Except upon the death of Donnie Lou Speer, it is the intention of the parties that there be no stated interest on this note except when and if the Default Rate applies.

3.  **DEFAULT RATE.** In the event that there shall occur any Default hereunder, or the maturity of the indebtedness evidenced hereby, whether by passage of time, acceleration, declaration or otherwise, then, in any such event, until the Default is cured, or the indebtedness evidenced hereby is paid or satisfied in full, the entire unpaid principal amount hereof shall bear interest at the rate which is equal to six percent (6%) per annum (the "Default Rate of Interest").

4.  **PAYMENTS OF PRINCIPAL AND INTEREST.** Principal on this Note shall be paid by the Debtor as follows:

    (a)  Commencing on the first day of the calendar month following the date of this Note and continuing on the first day of each calendar month thereafter for the next sixty (60) calendar months thereafter to and including December 1, 2010, the Debtor shall pay equal monthly installments of principal in the amount of $50,000.

    (b)  Interest shall begin accruing on this Note upon any Default, and continuing until such Default is cured, all at the Default Rate of Interest.

    (c)  All payments on account of the indebtedness evidenced by this Note shall be first applied to interest then due and then to principal in the order of its maturity.

5.  **CREDIT DOCUMENTS.** This Note was executed and delivered by the Debtor under and in accordance with that certain Purchase Agreement dated effective on even date herewith (the "Purchase Agreement") among the Debtor and the Payee, providing for, among other things, the purchase and sale of Payee's interests in certain business entities. This Note is secured by that certain Pledge

JHS                                                                                                DLS

iManage_889683_4.DOC                          1                     EXHIBIT A



Agreement of even date herewith from the Debtor to the Payee pursuant to which the Debtor pledged to the Payee the ownership interests in the entities acquired by the Debtor pursuant to the Purchase Agreement (the "Pledge Agreement"), which has been executed and delivered to the Payee. The Holder is entitled to all benefits and security provided for or referred to in the Pledge Agreement, to which reference is hereby made for a statement of the terms hereof.

6. SUBORDINATION.

(a) The Debtor's obligations with respect to the principal of and interest on this Note shall be subordinate and junior in right of payment, to the extent and in the manner set forth herein, to any indebtedness of the Debtor or Royce Homes, L.P. with respect to "Senior Debt," which is defined to mean loans to which Debtor or Royce Homes, L.P., a Texas limited partnership, is a party.

(b) No payment of principal or interest on this Note shall be made at any time when a default has occurred and is continuing under the terms of any Senior Debt (or if such a payment of principal or interest would result in such a default), and, if any such payment is made, then the Holder of this Note will hold the same in trust and pay it over to the holders of the Senior Debt.

(c) In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization, arrangement, readjustment, composition or similar proceedings in connection therewith, relative to the Debtor, Royce Homes, L.P. or to the creditors of either, as such, or to its property, or in the event of any proceedings for voluntary liquidation, dissolution or other winding-up of the Debtor or Royce Homes, L.P., whether or not involving insolvency or bankruptcy, or in the event of any assignment by the Debtor or Royce Homes, L.P. for the benefit of creditors or in the event of any other marshaling of the Debtor's or Royce Homes, L.P.'s assets, then the holders of Senior Debt shall be entitled to receive payment in full of all principal, premium, interest, fees and charges on all Senior Debt (including interest thereon accruing after the commencement of any such proceedings) before the Holder of this Note is entitled to receive any payment on account of principal or interest upon this Note, and to that end the holders of Senior Debt shall be entitled to receive for application in payment thereof any payment or distribution of any kind or character, whether in cash or property or securities, which may be payable or deliverable in any such proceedings in respect of this Note.

(d) Notwithstanding the occurrence of an Event of Default (as defined below) under circumstances when the provisions of the foregoing paragraphs (b) or (c) are inapplicable, the holders of the Senior Debt outstanding at any time during the existence of an Event of Default shall be entitled to receive payment in full of all principal of, and premium, interest, fees and charges on, all Senior Debt before the Holder of this Note is entitled to receive any payment on account of the principal of, or the interest on, this Note.

(e) No present or future holder of Senior Debt shall be prejudiced in his right to enforce the subordination of this Note by any act or failure to act on the part of the Debtor. This subordination of this Note, and the rights of the holders of Senior Debt with respect thereto, shall not be affected by any amendment or other modification of any Senior Debt or any exercise or nonexercise of any right, power or remedy with respect thereto.

(f) The holders of Senior Debt may, at any time, in their discretion, renew or extend the time of payment of Senior Debt so held or exercise any of their rights under the Senior Debt, including,

JHS                                                                               DLS

iManage_889683_4.DOC



without limitation, the waiver of defaults thereunder and the amendment of any of the terms or provisions thereof (or any notice evidencing or creating the same), all without notice to or assent from the Holder of this Note. No compromise, alteration, amendment, modification, extension, renewal or other change of, or waiver, consent or other action with respect to any liability or obligation under or with respect to, any terms, covenants or conditions of the Senior Debt (or any instrument evidencing or creating the same) and no release of property subject to the lien of the Senior Debt (or any instrument evidencing or creating the same), whether or not such release is in accordance with the provisions of the Senior Debt (or any instrument evidencing or creating the same) shall in any way alter or affect any of the provisions of this Note.

  (g)  Restrictions on Holder of this Note.

    (i)  The terms of this Note shall not be modified without the prior written consent of the holders of the Senior Debt.

    (ii)  The Holder of this Note shall not take any action against the Debtor or Royce Homes, L.P. with respect to any Event of Default until and unless (i) any event described in paragraph 6(c) has occurred, or (ii) a holder of Senior Debt shall have accelerated payment of any Senior Debt obligation of the Debtor or Royce Homes, L.P., or (iii) the Senior Debt shall have been paid in full.

    (iii)  The Holder of this Note shall provide to the Debtor, at any time and from time to time, at the Debtor's written request and at no expense to the Holder of this Note, a written acknowledgment by the Holder of this Note addressed to any holder of Senior Debt to the effect that such holder is a holder of Senior Debt, provided that prior to furnishing such acknowledgment, the Holder of this Note shall have received from the Debtor such information as the Holder of this Note shall reasonably request demonstrating to the Holder of this Note reasonable satisfaction that such holder is a holder of Senior Debt.

  7.  PREPAYMENT PRIVILEGE AND PREPAYMENT REQUIREMENT. The Debtor may prepay all or any part of the principal sum hereof at any time, and from time to time, upon not less than five (5) days prior written notice of such prepayment, without payment of any penalty or premium on account of such prepayment, all such prepayments to be applied first to the interest then due and then to the principal amount hereof in the order of its maturity.

  All distributions made to Debtor by First Duval Group, Inc., which are attributable to and funded by a life insurance policy owned by First Duval Group, Inc. on the life of John H. Speer shall be applied and paid to the Payee as a prepayment on this Note, up to and including the amount of principal and interest outstanding at the time of such distribution.

  8.  DEFAULT. The entire unpaid principal amount of, and all accrued interest on, this Note shall immediately become due and payable at the option of the Holder hereof upon the occurrence of any one or more of the following events of default (individually or collectively, herein called a "Default"):

    (a)  The failure or refusal of the Debtor to pay all or any part of the principal amount of, or accrued interest on, this Note as and when same becomes due and payable in accordance with the terms hereof and such failure remains uncured for a period of four consecutive months after written notice

_____   _____
JHS                                                    DLS

3

iManage_889683_4.DOC



from the Holder. Notwithstanding the foregoing, Payee acknowledges that Debtor's payments of principal and accrued interest on this Note are to be funded by distributions to Debtor from First Duval Group, Inc., a Nevada corporation, which is in turn funded by distributions with respect to its limited partnership interests in Royce Homes, L.P. Consequently, to the extent that the failure or refusal of Debtor to pay all or any part of the principal amount of, or accrued interest on, this Note when same becomes due and payable in accordance with the terms hereof occurs as a result of the failure of Royce Homes, L.P. to make distributions, then such failure by Debtor will not be considered an event of Default until after four consecutive months after written notice from the Holder; or

    (b)    The breach or nonperformance by the Debtor of any other term or provision contained in this Note (other than for payment of principal and interest when due) and such breach or nonperformance remains uncured for a period of four consecutive months after written notice from the Holder; or

    (c)    The breach or nonperformance by the Debtor or any other party (other than the Payee) of any of the terms or provisions of the Pledge Agreement, or any event occurs or condition exists which is specified as a default or an event of default thereunder, which is not cured within the applicable cure period, if any, set forth therein; or

    (d)    The Debtor shall (i) become insolvent within the meaning of the Bankruptcy Code of the United States, as amended, (ii) admit in writing its inability to pay or otherwise fail to pay its debts generally as they become due, (iii) voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or (iv) be made the subject of any proceeding provided for by any Debtor Relief Law that could suspend or otherwise affect any of the rights of the Holder hereof. As used herein, "Debtor Relief Law" means any provision of the Bankruptcy Code of the United States, as amended and all other applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, receivership, insolvency, reorganization or similar debtor relief law from time to time in effect affecting the rights of creditors generally.

Upon the occurrence of a Default, the Holder of this Note, without further notice or demand of any kind, may (i) declare the entire portion of the unpaid principal amount of, plus accrued interest and other sums due on, this Note immediately due and payable, (ii) exercise its rights and remedies under the Pledge Agreement; and (iii) proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Note or Pledge Agreement or any other document or instrument executed and delivered by the Debtor in connection with this Note.

    9.    **CONFESSION OF JUDGMENT.** Upon any Default hereunder, the Debtor authorizes any attorney admitted to practice before any court of record in the United States on behalf of the Debtor and at any time to confess judgment in any such court against the Debtor in the full amount due on this Note at such time, plus attorneys' fees and costs and expenses of litigation. The Debtor waives the benefit of any and every statute, ordinance or rule of court which may be lawfully waived conferring upon the Debtor any right or privilege of exemption, appeal, stay of execution or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power which the Debtor has given for any attorney admitted to practice before any court of record in the United States to appeal for and confess judgment against the Debtor shall be a continuous authority which shall not be exhausted or extinguished by any one or more exercises or

JHS                                                    DLS

iManage_889683_4.DOC



imperfect exercises thereof or by any one or more judgments entered pursuant thereto and may be exercised on one or more occasions and at such times and from time to time after Default and in the same or different courts or jurisdictions as the Holder may consider necessary, convenient or proper.

10. **COST OF ENFORCEMENT AND DEFENSE.** In the event that (a) proceedings at law, in equity or bankruptcy, receivership or other legal proceedings are instituted or threatened in connection herewith, or (b) the Holder is made a party to or is threatened with being made a party to any such proceedings, or (c) this Note is placed in the hands of an attorney for collection or upon Default, or in any other document or instrument given as security for, or related to, the indebtedness evidenced hereby, then in any such event the Debtor hereby agrees to pay all reasonable out-of-pocket costs of collection and/or attempting to collect this Note, and/or defending the rights of the Holder in any such proceedings or threatened proceedings and/or protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to all principal, interest and other amounts payable hereunder.

11. **NOTICES.** All notices and other communications to be given or made pursuant to this Note to the Debtor shall be in writing and shall be deemed to have been given if delivered personally, sent by facsimile transmission or mailed by registered or certified mail, postage prepaid, return receipt requested, and addressed and/or sent to the Debtor at its address (or facsimile transmission number) set forth on the signature page, or such other address as the Debtor may notify the holder hereof in writing.

12. **WAIVERS.** Except as expressly provided in Section 7 hereof, the Debtor expressly waives presentment for payment, notice of nonpayment, protest, notice of protest, bringing of suit, and diligence in taking any action to collect amounts owing hereunder, shall be liable for the full amount of all sums owing and to be owing herein, and agrees that this Note, or any payment hereunder, may be extended from time to time without affecting such liability.

13. **CUMULATIVE REMEDIES.** The remedies of the Holder hereof, as provided herein, the Pledge Agreement, or any other instrument securing this Note, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Holder hereof, and may be exercised as often as occasion therefor shall arise. No act of omission or commission by the Holder, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be affected only through a written document executed by the Holder and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

14. **SEVERABILITY.** Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

15. **CONFLICTS.** In the event of a conflict of any of the terms and provisions of this Note with the terms and provisions of any other instrument or agreement given to evidence or secure the indebtedness evidenced by this Note, and Holder of this Note may, at its option, determine which terms and provisions shall prevail.

JHS                                                                                                                                     DLS

5

iManage_889683_4.DOC



16. **GENERAL**.

    (a) This Note shall be governed by and construed in accordance with the laws of the State of Texas.

    (b) Time is of the essence of this Note and each of the provisions hereof.

    (c) The captions to the Sections of this Note are for convenience only and shall not be deemed part of the text of the respective sections and shall not vary, by implication or otherwise, the provisions of this Note.

17. **NO ASSIGNMENT OR NEGOTIATION**. Holder may not assign, negotiate, pledge or otherwise hypothecate this Note without the prior written consent of Debtor, which consent may be withheld in his absolute discretion, except to a trust or family limited partnership solely for the benefit of DONNIE LOU SPEER, the children of her and JOHN HOPKINS SPEER, and/or the heirs of such children.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be duly executed as of the day and year first above written.

DEBTOR:

_/s/ John Hopkins Speer_
JOHN HOPKINS SPEER

PAYEE:

_/s/ Donnie Lou Speer_
DONNIE LOU SPEER

JHS                                          DLS

6

iManage_889683_4.DOC